UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAWNI SAUNDERS,                          Case No.: 20-12210
                    Plaintiff,
v.                                       Paul D. Borman
                                         United States District Judge
COMMISSIONER OF SOCIAL
SECURITY,                                Curtis Ivy, Jr.
                    Defendant.           United States Magistrate Judge
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 19, 21)**

Plaintiff Tawni Renee Saunders ("Saunders") brings this action pursuant to

42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of

Social Security ("Commissioner") denying her applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the

Social Security Act (the "Act").  This matter is before the United States Magistrate

Judge for a Report and Recommendation on Plaintiff's motion for summary

judgment (ECF No. 19), the Commissioner's cross-motion for summary judgment

(ECF No. 21), and the administrative record (ECF No. 13).

For the reasons below, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 19), **GRANT** Defendant's

motion for summary judgment (ECF No. 21), and **AFFIRM** the Commissioner's

decision.

## I.     DISCUSSION

## A.     Background and Administrative History

Plaintiff alleges her disability began on January 18, 2013, at the age of 38. (ECF No. 13-6, PageID.425).  She filed her applications for DIB and SSI on September 22, 2015.  (*Id.*).  In her disability report, she listed several ailments which impaired her ability to work.  (*Id.* at PageID.430).  The ailments included: (1) Spinal stenosis; (2) Degenerative Disc Disease; (3) Osteoarthritis; (4) Anxiety; (5) and Depression.  (*Id.*).  Both applications were denied on May 20, 2016.  (ECF No. 13-4, PageID.238-246).  Following that denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at PageID.256).  On November 14, 2017, ALJ Lawrence E. Blatnik held a hearing.  (ECF No. 13-3, PageID.216). On February 15, 2018, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PageID.213).  Plaintiff filed a request for review with the Appeals Council.  Upon review, the Appeals Council remanded the claim because the decision failed to evaluate the treating physician opinion of Dr. Eldohiri and was unclear about Plaintiff's ability to sit or stand at will and the maximum Plaintiff could perform repetitive movement of the spine.  (*Id.* at PageID.233).

On remand, the ALJ held a second hearing on July 23, 2019, at which Plaintiff and a vocational expert ("VE"), Judith K. Findora testified.  (ECF No. 13-

2, PageID.65).  On September 3, 2019, the ALJ issued an opinion, which

determined that Plaintiff was not disabled within the meaning of the Social

Security Act.  (*Id*. at PageID.62).

Plaintiff later submitted a request for review of the hearing decision.  (*Id*. at

PageID.50).  On June 18, 2020, the Appeals Council denied Plaintiff's request for

review.  (*Id*.).  Thus, the ALJ's decision became the Commissioner's final

decision.

Plaintiff timely commenced the instant action on August 17, 2020.

**B.**   **Plaintiff's Medical History** [1]

On April 2, 2013, Plaintiff started treatment with Insight Institute of

Neurosurgery and Neuroscience.  (ECF No. 13-8, PageID.745).  On July 30, 2015,

Salah E. Eldohiri, M.D., diagnosed Plaintiff with post-laminectomy syndrome-

lumbar, chronic low back pain, lumbar radiculopathy, and long-term opioid

dependence.  Dr. Eldohiri adjusted her medications and injected Plaintiff at her

Left Lumbar Facet Block L3-S1.  (*Id*. at PageID.666-68).  By August 26, 2015,

Plaintiff was also diagnosed with lumbar facet arthropathy and continued her

medication management.  (*Id.* at PageID.663).  Dr. Eldohiri continued to treat her

---

[1] Since Plaintiff's arguments for review relate to her physical impairments, the
undersigned will only discuss the physical impairments at issue.

with medication, injections, and radiofrequency ablation.  (*see id.* at PageID.770-71;748-751).

On November 23, 2015, Sirajeddin Belkhair, M.D., examined Plaintiff and noted her normal straight leg raise and motor ability in her lower extremities. Plaintiff reported pain and numbness in her back, leg, and foot.  She also confirmed medications helped reduce pain and a cane helped with walking.  (*Id.* at PageID.789).

A February 29, 2016 MRI of Plaintiff's left knee revealed normal findings, with mild lateral subluxation and later tilting of the patella, and a moderate-sized joint effusion.  (*Id*. at PageID.792-93).  An April 1, 2016 x-ray of the lumbosacral spine revealed posterolateral lumbar fusion of L4-S1 discectomy and laminectomy, and possible hardware fracture in the S1.  A CT scan of the lumbar spine showed mild stenosis at L2-L3, mild to moderate stenosis at L5-S1, and mild to moderate degenerative change in the SI joints.  (*Id.* at PageID.794-796).  On April 14, 2016, Plaintiff underwent an electromyogram ("EMG") which revealed evidence suggestive of mild, predominantly axonal sensorimotor polyneuropathy impacting her lower extremities, the possibility of chronic L5/S1 polyradiculopathy, and no evidence of myopathy or motor neuron disease in the extremities.  (*Id*. at PageID.785).  During an office visit with Dr. Belkhair on April 25, 2016, he noted her normal gait.  (*Id.* at PageID.786).

On May 17, 2016, Quan Nguyen, M.D., completed a state agency review of Plaintiff's claim. Plaintiff can occasionally lift ten pounds. She can stand or walk for two hours. She can sit for about six hours in an eight-hour workday. She must periodically alternate between positions to relieve pain. She cannot push or pull and should be allowed to switch positions, provided she is not off task for more than 10% of the work period. She can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. She cannot climb ladders. She has no manipulative, visual, communicative, or environmental limitations. She must avoid all exposure to excessive vibration, hazardous machinery, unprotected heights, and repetitive movement of the lumbar spine. In the interim, there was a non-severe fracture of the right fibula, but the current medical evidence did not show worsening or change in exam. (ECF No. 13-3, PageID.187-89).

Plaintiff continued her treatment at the Insight Institute. Dr. Eldohiri and his colleagues noted Plaintiff's generally normal physical exams and complaints of back pain, headaches, and leg pain in April 2016 (ECF No. 13-8, PageID.837), June 2016 (*Id.* at PageID.816), August 2016 (*Id.* at PageID.818) and September 2016 (*Id.* at PageID.820). Dr. Eldohiri completed a Medical Source Statement during October 2016. He found she could occasionally lift less than ten pounds. She could stand or walk for less than two hours in an eight-hour day. She could sit continuously for less than six hours in an eight-hour day. She had mild push or

5

pull limitations in her extremities.  She could not bend or twist.  She can sit or stand for 30 minutes to an hour before needing to get up.[2]  She could sit, stand, or walk for less than two hours in an eight-hour day.  She needs periods of walking during an eight-hour day.  She can rarely lift less than ten pounds and never twist, stoop, crouch, and climb stairs or ladders.  (ECF 13-9, PageID.871-75).

Plaintiff was treated in the emergency department for complaints of back and leg pain in April and July 2017.  Doctors noted Plaintiff's generally normal physical exams, with some back tenderness and limited range of motion in her left hip.  (ECF No. 13-9, PageID.977-87).  On June 27, 2017, Plaintiff reported to Durand Family Healthcare increasing leg pain that starts in her back.  Plaintiff had been without medication as she was discharged from a pain management clinic for testing positive during a drug screen.  She used a cane and had generalized left leg weakness.  Doctors prescribed her pain medication and referred her to a pain specialist.  (*Id.* at PageID.903-05).  On July 28, 2017, Plaintiff reported low back, leg, and groin pain to Naman Salibi, M.D.  Dr. Salibi noted her abnormal gait, normal muscle strength, and 5/5 strength in her extremities.  Dr. Salibi ordered an MRI and CT scan.   (*Id.* at PageID.1015-18).

---

[2] It is not clear whether Dr. Eldohiri signals Plaintiff can do these activities for 30 minutes or an hour, as he circled both.

6

An August 11, 2017 x-ray of the lumbosacral spine indicated stable fracture of the bilateral S1 screws and posterolateral lumbar fusion of L4-S1 discectomy and laminectomy.  An MRI of the lumbar spine showed the same, along with mild postsurgical granulation tissue, mild central canal stenosis at L2-L3 and L3-L4, mild left foraminal stenosis at L5-S1, and no evidence of disc protrusion at the site of laminectomy.  (*Id.* at PageID.1021-23).  A CT of the lumbar spine revealed the same, along with possible contact along the undersurface of the exiting L5 nerve roots bilaterally, without nerve root impingement, and stable degenerative changes of the SI joints.  (*Id.* at PageID.1019-1020).

Plaintiff saw Dr. Salibi again on August 25, 2017.  She reported back, leg, and groin pain.  Dr. Salibi noted her abnormal gait, normal muscle strength, zero deep tendon reflexes, and positive straight leg raise.  Upon review of her scans, he found that the fracture of screws was stable, so surgery was unnecessary, though her lower extremity pain may have been caused by scar tissue.  He recommended physical therapy, injection, and weight loss.  (*Id*. at PageID.1010-13).

Plaintiff was seen in the emergency room for back and leg pain September through December 2017, and January and February 2018. (ECF No. 13-12, PageID.1397-1425).  Doctors noted her normal musculoskeletal and cervical spine range of motion.  She had limited range of motion in her lumbar spine and hip pain.  (*See id*. at PageID.1399;1404; 1408; 1412).  She also had muscle spasms,

vertebral tenderness, and healed surgical scars in the lumbar region.  (*See id*. at PageID.1415; 1419).

Plaintiff saw Dr. Salibi again on July 18, 2018.  She reported back, groin and leg pain.  Upon exam, Plaintiff could heel walk, but was unable to tiptoe walk. She had intermittent left thigh and left foot muscle spasms.  She was positive for patellar and ankle jerks.  Her gait was abnormal, though she had normal muscle strength and 5/5 strength in her extremities.  She tested positive for straight leg raise and left hip pain with internal and external rotation.  She was treated with Gabapentin.  (ECF No. 13-10, PageID.1117-21).

On October 22, 2018, Waheed Akbar, M.D., an orthopedic surgeon, examined Plaintiff.  She reported hip, leg, and back pain.  Dr. Akbar noted range of motion was normal in her right hip and limited in the left.  He diagnosed her with hip arthritis, which was clinically worse on the left, and degenerative disc disease of the lumbar spine.  He recommended total hip replacement.  (ECF No. 13-12, PageID.1270-72).  On February 18, 2019, Dr. Salibi approved Plaintiff to proceed with surgery.  (ECF No. 13-12, PageID.1112).  Plaintiff had yet to schedule surgery by the July 23, 2019 administrative hearing.  (ECF No. 13-2, PageID.90).

On April 15, 2019, physiatrist Asit Kumar Ray, M.D., did a consultative examination of Plaintiff.  She reported a pain level of 4 that day, but her maximum went up to 9.  She walked normally without a limp.  She did not use any assistive

8

devices.  She could walk on her tiptoes as well as her heels.  She had normal range of motion in the spine, shoulder, hips, elbows, lumbar, and wrists.  She could make a full fist in both hands.  She had a surgical scar in the lumbar and her left sided paraspinal muscle was tender.  There was no evidence of muscle spasms and the lumbar spine was flexible.  There was no clinical evidence of lumbosacral radiculopathy.  Based on their conversation, she was independent in self-care and activities of daily living.  Dr. Ray found she could perform her usual and customary activities during her occupational duties with no restrictions.  (ECF No. 13-10, PageID.1094-97).

## C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 18, 2013, the alleged onset date.  (ECF No. 13-2, PageID.68).  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; status post laminectomy and fusion surgeries; osteoarthritis; obesity; depression; and an anxiety disorder.  (*Id.*).  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.* at PageID.71).  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional

capacity ("RFC")[3] and determined that Plaintiff had the RFC:

> to perform sedentary work . . . The claimant can lift,
> carry, push and pull ten pounds occasionally and
> less than ten pounds frequently. She can sit for six hours,
> and stand and walk for two hours, but would need to
> alternate position every 20 to 30 minutes, for three to five
> minutes at a time. She can never operate foot controls
> with either foot. She can never climb ladders, ropes, or
> scaffolds, or bend or twist at the waist; and can
> occasionally balance, stoop, kneel, crouch crawl and
> climb ramps and stairs. She can never work at
> unprotected heights or with moving mechanical parts,
> and must avoid all exposure to vibration. She can
> perform simple, routine and repetitive tasks; work that
> involves only occasional interaction with supervisors, co-
> workers and the public; and work that does not require
> frequent significant workplace changes or adaptions.

(*Id.* at PageID.72).  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id.* at PageID.75).  At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ determined there

were existing jobs in significant numbers within the national economy that Plaintiff

could perform, such as administrative support clerk, packer, and sorter.  (*Id.* at

PageID.76).  The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, since January 18, 2013, through

the date of the decision.  (*Id.* at PageID.77).

## D. Framework for Disability Determinations

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[4] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy. *Richardson v. Sec'y of Health & Hum. Servs.*, 735 F.2d 962, 964 (6th Cir. 1984).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case

---

[4] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

Plaintiff makes three arguments for remand.  First, she argues the ALJ violated the treating physician rule because he failed to give good reasons for rejecting Dr. Eldohiri's opinion and the ALJ's analysis is not supported by substantial evidence.  (ECF No. 19, PageID.1477-89).  Second, she argues the RFC is not supported by substantial evidence because finding Plaintiff "'can never…bend or twist at the waist'" is internally inconsistent with the limitation that she can occasionally stoop and crouch and conflicts with sedentary work.  (*Id.* at PageID.1489-93) (citations omitted).  Finally, she argues the RFC is not supported by substantial evidence because finding Plaintiff "'need[s] to alternate position every 20 to 30 minutes'" means Plaintiff would be off-task 20% of the

time and precluded from work.  Thus, the record is clear that Plaintiff is entitled to benefits.  (*Id.* at PageID.1493-94) (citations omitted).

### 1.  Evaluation of Dr. Eldohiri's Medical Source Statement

Plaintiff contends the ALJ failed to give Dr. Eldohiri's medical source statement proper deference in violation of the treating physician rule.  (*Id*. at PageID.1477-89).  The Commissioner responds the ALJ gave Dr. Eldohiri's opinion less than controlling weight because his opinion was not supported by his own treatment notes and went against the record.  (ECF No. 21, PageID.1504-17).

The ALJ must balance six factors to evaluate every medical opinion.  20 C.F.R. § 404.1527(c).  These factors include: (1) whether the source examined the claimant; (2) treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; (6) and any other factors.  *Id.*  When, as here, a claim was filed before March 27, 2017, the treating physician rule applies.  An ALJ must give controlling weight to the opinion of a treating physician if: "(1) the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) the opinion 'is not inconsistent with the other substantial evidence in [the]case record.'"  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527)).  This applies only when the opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and*

14

*Hum. Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991).  If the ALJ gives less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  The reasons must be "'supported by the evidence in the case record, and … sufficiently specific to make clear … the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Gayheart*, 710 F.3d at 376 (citations omitted).  This "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

Violation of the treating physician rule may be considered harmless error if (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; and (3) 'where the Commissioner has met the goal of §1527(d)(2)–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation.'"  *Wilson*, 378 F.3d at 547.   If the ALJ's analysis implicitly provides sufficient reasons for rejecting the opinion, the ALJ's divergence from the regulations may be harmless error.  *See Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (harmless error when ALJ indirectly attacked supportability and

consistency by review of record evidence conflicting with opinions and reference to lack of support for doctor's finding).  That said, there can be no "harmless error where [the court] cannot engage in 'meaningful review' of the ALJ's decision." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544).

The ALJ's finding that Dr. Eldohiri's opinion is not well supported by his own treatment notes is a sufficiently specific reason for rejecting his opinion and supported by substantial evidence in the record.  The ALJ noted that he gave "little weight to the October 2016 assessment of treating physician Salah Eldohiri," because "the restrictions found are not well supported by his treatment records." (ECF No. 13-2, PageID.74).  This reason is sufficiently specific because it is not ambiguous about its supportability.  In *Gayheart*, the ALJ committed reversible error because his conclusion that the treating physician's opinions were not supported by "any objective findings" made it difficult to determine the opinion's purported problem.  *Gayheart*, 710 F.3d at 377.  Unlike the ALJ in *Gayheart*, the ALJ here clarified what the opinion's problem is—Dr. Eldohiri's medical records contradict his finding.

This finding is also supported by substantial evidence in the record.  In the months before and after his October 2016 medical source statement, Dr. Eldohiri and his colleagues at the Insight Institute noted consistently normal physical

exams.  On April 25, 2016 Dr. Eldohiri's colleague Dr. Belkhair noted she had a normal gait without pain.  (ECF No. 13-8, PageID.837).  On June 16, 2016 Rebecca Aaron, NP, noted her normal coordination, deep tendon reflexes and grossly normal motor strength.  (*Id*. at PageID.816).  On August 10, 2016, Nurse Aaron again noted her normal coordination, reflexes, and motor strength.  (*Id.* at PageID.818).  In September 2016, Nurse Aaron noted the same.  (*Id.* at PageID.820).  After his October 2016 opinion, Dr. Eldohiri examined Plaintiff and noted her normal cranial nerves, coordination, deep tendon reflexes and found that she "ambulates without the use of an assistive device."  (*Id.* at PageID.828). Rejecting a treating source opinion because it was not fully supported by the source's own treatment notes is supported by substantial evidence.  *Gant v. Comm'r of Soc. Sec*., 372 F. App'x 582, 584 (6th Cir. 2010) ("Because the record adequately supports the finding that Dr. Watson's medical opinion was not supported by her own treatment notes and was inconsistent with the record as a whole, the ALJ was warranted in discrediting her opinion.").

The ALJ's finding that Dr. Eldohiri's opinion deviates from contemporaneous record evidence is not sufficiently specific.  The ALJ explains he gave the opinion little weight because it was not well supported by "…other contemporaneous record evidence."  (ECF No. 13-2, PageID.74).  Without further elaboration on the "other contemporaneous record evidence," it is not clear what

17

the opinion is inconsistent with—an error by the ALJ.

That said, this error was ultimately harmless because the ALJ's RFC analysis is an indirect attack on the opinion's consistency with the record. The ALJ's discussion of Plaintiff's physical impairments makes clear how and why the ALJ found Dr. Eldohiri's opinion inconsistent with the rest of the record. In *Nelson*, the ALJ's failure to directly address an opinion's consistency was harmless error, because the ALJ's analysis of the plaintiff's mental problems indirectly attacked the opinion's consistency and implicitly provided sufficient reasons for giving the opinion little weight. *Nelson*, 195 F. App'x at 472. Like the ALJ in *Nelson*, the ALJ here analyzes evidence of milder physical impairments throughout the record, illustrating how he found the opinion inconsistent and why he gave it little weight. He highlights conflicting medical opinions, treatment records, and diagnostic testing that conflict with Dr. Eldohiri's findings. (ECF No. 13-2, PageID.74-75).

The ALJ's conclusion that Dr. Eldohiri's opinion was inconsistent with contemporaneous evidence throughout the record is also supported by substantial evidence. A November 2015 exam by Dr. Belkhair revealed normal reflexes and motor function in Plaintiff's lower extremities. (ECF No. 13-8, PageID.789). An April 2016 EMG suggested mild polyneuropathy affecting the lower extremities and the possibility of a chronic polyradiculopathy. (*Id.* at PageID.785). Dr.

Salibi's July 2017 notes charted Plaintiff's normal muscle strength and tone. (ECF

No. 13-9, PageID.1017). August 2017 scans revealed stable fracture of the

bilateral S1 screws, mild central canal stenosis, mild left foraminal stenosis, no

evidence of disc protrusion, no nerve root impingement, and stable degenerative

changes of the SI joints. (*Id.* at PageID.1019-23). He also cited Dr. Nguyen's

finding Plaintiff could work with shifting position, leg use, postural, and

environmental restrictions. (ECF No. 13-3, PageID.187-89). He relied on Dr.

Ray's opinion and observations that Plaintiff could walk normally, had normal

deep tendon reflexes, normal range of motion, and appeared flexible. (ECF No.

13-10, PageID.1095-97). An ALJ can draw from the record as a whole in crafting

the RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-728 (6th Cir.

2013) (rejecting contention ALJ was "bound" by one medical opinion - ALJ

"properly based her RFC determination on all the evidence of record"). The ALJ

highlighted evidence throughout the record to implicitly reject Dr. Eldohiri's

opinion.

The ALJ gave good reasons for rejecting Dr. Eldohiri's opinion and those

reasons are supported by substantial evidence. The ALJ highlighted that Dr.

Eldohiri's own treatment notes contradict the severity of restrictions he found. The

ALJ implicitly detailed how Dr. Eldohiri's opinion was inconsistent with treatment

notes, diagnostic testing, and conflicting opinions throughout the record.

Reviewing the record again to arrive at a contrary conclusion would be reweighing the evidence, and therefore improper. *Big Ranch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013) ([w]e do not reweigh the evidence or substitute our judgment for that of the ALJ.") (quoting *Tennessee Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001)).  Remand is not warranted on this issue.

### 2. Bending and Twisting Restrictions in RFC

Plaintiff reasons the RFC is not supported by substantial evidence because finding Plaintiff "'can never … bend or twist at the waist'" conflicts with the finding that Plaintiff can "occasionally . . . stoop, kneel, crouch" and is preclusive of even sedentary work because inability to bend impedes the sitting necessary for sedentary work.  (ECF No. 19, PageID.1489-93) (citations omitted).  The Commissioner admits the ALJ erred by including two conflicting limitations in the RFC by finding that Plaintiff could "never bend or twist at the waist" and could occasionally stoop and crouch.  That said, the Commissioner argues the ALJ's error was harmless because the ALJ presented all restrictions to the VE who identified jobs existing in the national economy that could be performed by someone with Plaintiff's restrictions.  (ECF No. 21, PageID.1517-21).

The ALJ found that Plaintiff could not perform the full range of sedentary work, as he identified more limitations on Plaintiff's ability to work.  Notably, she "can never…bend or twist at the waist; and can occasionally balance, stoop, kneel,

20

crouch."  (ECF No. 13-2, PageID.72).  Defendant concedes this is contradictory, because stooping is "bending the body downward and forward by bending the spine at the waist," and crouching is "bending the body downward and forward by bending both the legs and spine."  SSR 85-15, 1985 WL 56857, at 7* (Jan. 1, 1985).  Someone who could never bend or twist at the waist could not occasionally stoop or crouch.  The RFC is inconsistent.  Nevertheless, the ALJ's error is harmless because it did not prejudice Plaintiff.  *Rabbers*, 582 F.3d at 651 (allowing reversal where "'error prejudices a claimant on the merits or deprives the claimant of a substantial right.'") (citations omitted).  The ALJ included all restrictions, including the bending/twisting restriction, in his hypothetical questions for the VE. (ECF No. 13-2, PageID.103-04).  The RFC describes the most a claimant can do despite her limitations, so the more limiting restrictions control.  20 CFR § 1545(a).  Since the VE considered the most limiting restrictions, the ALJ's error did not prejudice Plaintiff.  *See Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 679 (6th Cir. 2013) ("Where…description of the residual functional capacity given by the administrative law judge to the vocational expert included all the relevant limitations, we rely on that description and not the characterization in the written description.").

Though an inability to stoop does significantly limit the occupational base it does not completely preclude a claimant from work as Plaintiff contends.  A

complete inability to stoop "significantly erode[s] the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply."  SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996).  That said, finding claimant can do "less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.'  If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience."  *Id.* at *1.  To find that there are other jobs in the national economy Plaintiff can do, the regulations recommend consulting a vocational expert, particularly "where the individual is limited to less than occasional stooping."  *Id.* at *8.

Here, the ALJ properly consulted the VE to determine whether Plaintiff's limitations precluded her from all work.  While the inability to stoop was not included in the ALJ's first hypothetical to the VE, the ALJ posed another hypothetical to the VE which included this limitation.  The ALJ asked: "what if we modify that last hypothetical to add an additional restriction and that would be no bending or twisting at the waist.  Would that have any vocational impact as far as jobs?" (ECF No. 13-2, PageID.104).  In response, the VE confirmed that this hypothetical individual could find work as a support clerk, packer, and sorter.  *Id.*  Thus, there is substantial evidence to support a finding that there are existing jobs

in the national economy for Plaintiff despite her inability to bend or twist at the

waist.[5]  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996)

("'Substantial evidence may be produced through reliance on the testimony of a

vocational expert in response to a 'hypothetical' question, but only 'if the question

accurately portrays [plaintiff's] individual physical and mental impairments.'")

(citations omitted).  Remand on this issue is unnecessary.

      3.  Shifting Positions Restrictions in RFC

      Finally, Plaintiff contends the RFC is not supported by substantial evidence

because if Plaintiff "'need[s] to alternate position every 20 to 30 minutes'"

Plaintiff would be off-task 20% of the time, which the VE found work preclusive.

The ALJ failed to resolve this conflict in violation of SSR 00-4p.  Consequently,

Plaintiff asserts the record is clear that she is entitled to benefits.  (ECF No. 19,

PageID.1493-94) (citations omitted).  The Commissioner argues Plaintiff has not

shown frequent shifting positions from sitting to standing throughout the day

would lead an employee to be off task 20% of the workday.  The VE identified

leaving the worksite as off-task conduct.  Plaintiff fails to show shifting positions

requires leaving the worksite.  Further, the ALJ elicited testimony from the VE

about any conflicts pursuant to SSR 00-4p.  (ECF No. 21, PageID.1521-23).

---

[5] Even if inability to bend at the waist precluded sitting as Plaintiff argues, the VE considered
this limitation and still found jobs in substantial numbers still existed in the national economy for
such an individual.

The ALJ found that Plaintiff "can sit for six hours, and stand and walk for two hours, but would need to alternate position every 20 to 30 minutes, for three to five minutes at a time." (ECF No. 13-2, PageID.72).  The ALJ questioned the VE about a hypothetical individual who had this limitation and she identified that the individual could find work as a support clerk, packer, and sorter.  (*Id.* at PageID.103-04).  The ALJ later asked how being off-task and unproductive 20% or more of the workday would impact that individual's ability to perform as a support clerk, packer, and sorter.  (*Id.* at PageID.104-05).  The VE answered: "if the individual is physically getting up *and leaving the worksite* taking additional breaks, it begins to become preclusive at approximately 20 percent if done on a regular, consistent basis."  (*Id.* at PageID.105) (emphasis added).

Plaintiff argues her need to shift positions equates to being off-task 20%, thus the VE confirmed she cannot work.  However, it is not clear that the need to alternate positions every 20 minutes for up to 5 minutes at a time necessarily means the individual would be off task, as the VE describes it.  The VE defines "off task" as "physically getting up and leaving the worksite."  (*Id.*).  It is not clear from the record that shifting positions requires leaving the worksite, and is therefore work preclusive.  Moreover, the VE confirmed that someone with a shifting positions limitation could still find work.  So, the conflict Plaintiff argues the ALJ failed to resolve does not exist and substantial evidence supports the RFC.

24

Even if that conflict did in fact exist, the ALJ resolved the conflict through the VE's testimony.  While SSR 00-4p allows the ALJ to rely on VE testimony, before relying on testimony that may conflict with the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."  SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  A reasonable explanation for conflicts in occupational information is "[e]vidence from VEs or VSs can include information not listed in the DOT." *Id.*  The ALJ directly questioned the VE about the basis of her conclusions about "the need for frequent position changes, allowable levels of time off task and absenteeism that aren't addressed by the DOT."  In response, the VE cited her professional experience, training, and research, and confirmed that the rest of her testimony aligned with the DOT.  (ECF No. 13-2 PageID.105).  The ALJ explained this conflict and resolution in his decision (*Id.* at PageID.77), as required by the regulations.  SSR 00-4p, 2000 WL 1898704 at *4.  The ALJ complied with SSR 00-4p, so a remand on this basis is improper.

**G.    Conclusion**

Plaintiff has the burden of proof on her statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 19), **GRANT** Defendant's motion for summary judgment (ECF No. 21), and **AFFIRM** the Commissioner of Social Security's decision.

## II.     PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

26

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 11, 2022                     s/Curtis Ivy, Jr.
                                            Curtis Ivy, Jr.
                                            United States Magistrate Judge

27